UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT HARTSHORN,

                                  Case No. No.  19-13303

          Plaintiff,                 District Judge Paul D. Borman

v.                                 Magistrate Judge R. Steven Whalen

ANDREW SAUL, COMMISSIONER OF
SOCIAL SECURITY,

         Defendant.
_____ /

**REPORT AND RECOMMENDATION**

Plaintiff Kurt Hartshorn brings this action under 42 U.S.C. § 405(g), challenging Defendant Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.   The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment  [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 14] be DENIED.

## I.  PROCEDURAL HISTORY

On December 30, 2015, Plaintiff filed an application for DIB, alleging disability as of November 27, 2015. ECF No. 8-5, PageID.205 (Tr. 176).[1]  Upon initial denial of the claim, he requested an administrative hearing, held on June 1, 2018 in Mount Pleasant, Michigan (Tr. 40).   Administrative Law Judge ("ALJ") Sarah Zimmerman presided. Plaintiff, represented at the hearing by Salina Choice, testified (Tr. 49-79), as did Vocational Expert ("VE") Jacquelyn Schabacker (Tr. 79-85).  On October 23, 2018, ALJ Zimmerman determined that Plaintiff was not disabled (Tr. 15-33).  On September 9, 2019, the Appeals Council declined to review the ALJ's decision (Tr. 1-3).  Plaintiff filed her complaint in this Court on November 8, 2019.

## II.  BACKGROUND FACTS

Plaintiff, born January 24, 1970, was 48 at the time of the ALJ's decision  (Tr. 33, 176). He graduated from 12th grade (Tr. 213).  His vocational training history includes study of geometric dimension, quality control auditing, pneumatic systems, blueprint reading, and forklift/industrial equipment operation (Tr. 213).  His application for benefits states that he worked previously as a casino counter, security officer, and material handler (Tr. 214).  He alleges disability as a result of diabetes, bipolar disorder, hypertension, hyperlipidemia, a left shoulder injury, sleep apnea, hip and pelvis problems, restless limb syndrome, and arthritis

---

[1] References to the administrative transcript (ECF No. 8) are henceforth cited by transcript page number (Tr. xx).

(Tr. 212).

### A.  Plaintiff's Testimony

*The ALJ prefaced Plaintiff's testimony by noting receipt of an anonymous letter by an individual challenging Plaintiff's entitlement to disability and that it  had been added to the exhibits as a "third-party" statement* (Tr. 44-45 *citing* 299).

Plaintiff then offered the following testimony.

His work activity since November, 2015 was limited to work as a bell-ringer for the Salvation Army (Tr. 49).  The work involved standing five hours a day five days a week (Tr. 50).  He was allowed to take breaks as needed (Tr. 50).  The work involved interacting with the public (Tr. 51).  He also worked as a bell ringer in 2012 (Tr. 52).  His former work included working for a casino as a "count team associate," which required him to both sit and stand, and to lift up to 10 pounds (Tr. 54-55).   He also worked as a security guard (Tr. 55). Other work for a water softening outfit required him to lift up to 80 pounds (Tr. 56).  His work as a material handler required him to lift up to 200 pounds but more commonly required lifting 50 pounds (Tr. 57).  He held a variety of other jobs requiring up to 50 pounds lifting (Tr. 57-61).

Plaintiff lived with his wife (Tr. 66).  He had a driver's license (Tr. 66).  As a teenager, he was an alcoholic (Tr. 66).  He drank a beer two weeks before the hearing, characterizing his drinking as "very occasional" (Tr. 67).  He had been diagnosed with an opiate addiction, but disputed the diagnosis (Tr. 67).  The last time he used opiates was in

2016 (Tr. 67).

In regard to the anonymous letter, Plaintiff denied the writer's claim that Plaintiff "tossed kids in the air" (Tr. 68). He acknowledged that he sometimes threw a football and that he performed yard work (Tr. 68). He denied shoveling snow or snow-blowing (Tr. 69). He acknowledged that he babysat, along with his wife, for children with similar names to those listed in the anonymous letter (Tr. 70). He denied the letter's claim that he did not bother to follow a diabetic diet (Tr. 71).

Plaintiff was unable to work due to morning dizziness, back, leg, and neck pain, and extremity numbness (Tr. 72). He experienced "bad days" up to half of each month characterized by searing pain and sleep disturbances (Tr. 72). He experienced the medication side effects of dizziness, nausea, sleepiness, and fatigue (Tr. 73). He experienced leg cramps and numbness after sitting for 20 minutes (Tr. 73). He was unable to stand in one place for more than two minutes before experiencing hip pain and was limited to walking a maximum of one mile (Tr. 74). He experienced difficulty lifting a gallon of milk, bending/twisting, and squatting (Tr. 75). He experienced short-term memory problems (Tr. 75). He experienced headaches up to three times a week lasting for up to two hours (Tr. 76). Due to bowel problems, he needed to be "near a restroom" after eating (Tr. 76). He had experienced loss of balance while showering and had installed shower grip handles to avoid injury (Tr. 76).

Due to bipolar disorder and physical symptoms, Plaintiff sometimes slept as few as two hours a night (Tr. 77).  He typically took one to two naps a day due to the medication side effect of sleepiness (Tr. 77).  Plaintiff finished his testimony by again denying the allegations made in the anonymous letter (Tr. 78-79).

### B.  Medical Records[2]

### 1. The Treating Records

In November, 2015, Plaintiff reported that his psychological symptoms were "reasonably controlled" (Tr. 422).  In January, 2016, Plaintiff reported that his diabetes was "under better control now" (Tr. 416).  He reported that he was getting more depressed and was fatigued (Tr. 416).  Treating records from the same month by Michael C. McConnon, M.D. state that he was "alert, []cooperative, [and] oriented" (Tr. 481).  In February, 2016, Dr. McConnon composed a letter, opining that Plaintiff's various medical conditions affected his judgment and made him "forgetful at times," adding that diabetes medication also made him "forgetful at times" (Tr. 1494). Treating records from the same month note that Plaintiff appeared alert and oriented and "not anxious or forgetful" (Tr. 627).  However, Plaintiff reported anxiety, depression, and poor judgment (Tr. 527, 624).  The same month, a heart catheterization was performed without complications (Tr. 530).  March, 2016 records note full orientation with normal insight, mood, affect, and judgment (Tr. 621).  April, 2016

---

[2]Plaintiff's argument for remand pertains exclusively to his alleged psychological limitations.  ECF No. 14.  While the medical transcript has been review in full, the current discussion is limited to the psychological conditions.

records note an appropriate mood and affect with full orientation and no memory deficits (Tr. 609). June, 2016 records note full orientation with an appropriate mood and affect (Tr. 698). The next month, Mitchel Osman, M.D. noted that Plaintiff was alert, well dressed, and relaxed (Tr. 944). In October, 2016, Dr. Osman noted Plaintiff's report of mood disorders, recommending that Plaintiff arise earlier, engage in interesting activities, and read a book on a daily basis (Tr. 917). October, 2016 records also note full orientation and normal mood and affect (Tr. 811).

In January, 2017, Plaintiff exhibited a normal affect, mood, judgment, and orientation (Tr. 781). In May, 2017, Dr. Osman noted good psychological progress (Tr. 918). In June, 2017, Dr. McConnon completed a physical residual functional capacity questionnaire, noting the conditions of depression, anxiety, and bipolar disorder along with a number of physical conditions (Tr. 831). He found that the condition of bipolar disorder was "not well controlled" and that Plaintiff was incapable of even low stress jobs (Tr. 832). He found that Plaintiff would be expected to be off task 20 percent of the workday and would miss four days of work each month (Tr. 832-833).

In August 2017, Plaintiff denied problems concentrating or with poor judgment but reported anxiety, depression, and fatigue (Tr. 1415). In October 2017, Plaintiff reported headaches accompanied by memory loss and personality changes (Tr. 762). He appeared fully oriented with normal judgment, mood, and affect (Tr. 764). An MRI of the brain from the same month was essentially unremarkable (Tr. 775).

In January 2018, Plaintiff reported continued headaches (Tr. 1456).  He appeared fully oriented with fluent speech, normal thought processes, good insight, and no hallucinations (Tr. 1459).  In April, 2018, Plaintiff reported that his headaches resolved after changing medication (Tr. 1461).  In August 2018, Dr. Osman completed a mental residual functional capacity questionnaire, noting the conditions of a mood disorder and social anxiety (Tr. 835).  Dr. Osman opined that Plaintiff's mood problems stemmed from physical limitations, adding that Plaintiff complained of concentrational problems (Tr. 835).  Dr. Osman noted an inappropriate affect, emotional lability, maladaptive patterns of behavior, and sleep disturbances (Tr. 836).  He found that Plaintiff's "mental abilities and aptitudes needed to do unskilled work" were "limited but satisfactory" (Tr. 837-838).  He found that Plaintiff would miss one day of work each month on a "rare" basis (Tr. 838).

In November, 2017, Dr. McConnon completed a physical residual functional capacity questionnaire (essentially identical to his June, 2017 assessment) opining that due to bipolar disorder, diabetes, and left shoulder pain, Plaintiff would be expected to be off task 20 percent of the workday, was incapable of even "low stress" jobs, and would miss four days of work each month (Tr. 758-759).  Dr. McConnon noted that the condition of bipolar disorder was "not well controlled" (Tr. 758).

### 2.  The Non-Treating Records

In July, 2016, George F. Ronan, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report numerous physical problems

contributing to his disability (Tr. 717). Plaintiff reported a history of panic attacks (Tr. 718). He reported that he got along well with family and friends (Tr. 718). He reported that his daily activities included driving to meet his wife for lunch, performing light housework, playing video games, shopping, and personal care activities (Tr. 718). He reported mood swings ranging from the feeling that he was "educated" and "handsome," to feeling like "garbage" (Tr. 719).

Dr. Ronan noted that Plaintiff denied hallucinations and was fully oriented with a normal memory (Tr. 719) He found that Plaintiff could "understand, retain, and follow simple instructions" but would "be expected to demonstrate difficulty adjusting to changes in his environment" with "significant distress adjusting to his chronic health related concerns" (Tr. 720). He found that Plaintiff could manage his benefit funds (Tr. 721).

In July, 2016, Robert Newhouse, M.D. performed a non-examining review of the treating and consultative evidence, finding that Plaintiff experienced moderate limitation in concentration, persistence, or pace but otherwise mild psychological limitation (Tr. 97). He found moderate limitation in understanding, remembering, and carrying out detailed instructions; maintaining attention for extended periods; and working within a schedule (Tr. 102).

### C.  Vocational Testimony

VE Heather Benton classified Plaintiff's past work as a bell ringer as exertionally light and unskilled[3] (Tr. 81).  The ALJ then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work history:

> [A]ssume that the hypothetical individual is able to lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally.  Is able to stand and/or walk for eight hours and sit for eight hours during a normal eight-hour workday.  Such a hypothetical individual should be able to change position for one to two minutes after every 60 minutes of continuous sitting while remaining on task.  The hypothetical individual can frequently as opposed to constantly push and pull with the left upper extremity and can, occasionally reach overhead with the left upper extremity.  The hypothetical individual can occasionally climb ramps, stairs and ladders but can never climb ropes or scaffolds.  The hypothetical individual can frequently balance as that term is defined in the [*Dictionary of Occupational Titles*] and can occasionally stoop, kneel, crouch and crawl.  The hypothetical individual can occasionally be exposed to dangerous machinery and hazardous heights.  In light of these limitations, could the hypothetical individual perform any of the past jobs described in your amended case analysis as actually performed or generally performed in the national economy? (Tr. 81-82).

The VE testified that the above limitations would allow the individual to perform Plaintiff's past work as a bell ringer (Tr. 82).   She found further that the hypothetical

---

[3]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

restrictions would allow for the exertionally light, unskilled work of a photocopy operator (70,000 positions in the national economy); mail clerk (100,000); and inspector/hand packager (80,000) (Tr. 83). She stated that her testimony was consistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") and her own professional experience (Tr. 83). The ALJ testified that the additional limitation of work with "simple instructions" would allow for the work as a bell ringer (Tr. 84).

In response to questioning by Plaintiff's attorney, the VE stated the need to be off task 20 percent or more of the workday, or, miss four days of work each month would be work preclusive (Tr. 85).

### D.  The ALJ's Determination

Citing the medical transcript, ALJ Zimmerman found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical spine, diabetes mellitus with mild peripheral neuropathy, left shoulder status post mid clavicle fracture, obesity, and affective disorder" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-20).

The ALJ found that Plaintiff experienced mild limitation in understanding, remembering, or applying information; interacting with others; and adaptation, but moderate limitation in concentration, persistence, or pace (Tr. 21-22).

The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional restrictions:

> [C]laimant can stand and/or walk for eight hours and sit for eight hours during an eight-hour workday. The claimant should be able to change position for one to two minutes after every 60 minutes of continuous sitting, while remaining on task. The claimant can frequently, as opposed to constantly, push and pull with the left upper extremity. He can occasionally reach overhead with the left upper extremity. The claimant can occasionally climb ramps, stairs, and ladders. The claimant can never climb ropes or scaffolds. He can frequently balance, as that term is defined in the [*DOT*]. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can tolerate occasional exposure to dangerous machinery and hazardous heights. He is able to carry out simple instructions (Tr. 22-23). .

Citing the VE's testimony (Tr. 82-83), the ALJ determined that Plaintiff could perform his former work as a bell ringer as well as the unskilled work of copy machine operator, inspector/hand packager, and mail clerk (Tr. 32-33).

The ALJ rejected Plaintiff's professed degree of psychological limitation (Tr. 25-26). She cited Dr. McConnon's observation of full orientation, a normal attention span, and normal concentration (Tr. 25-27). She cited Dr. Ronan's consultative observation that Plaintiff drove to meet his wife for lunch on a daily basis, performed light household chores, watched his niece and nephew, shopped, and took care of his personal needs (Tr. 26). She cited Plaintiff's January, 2018 statement that symptoms of bipolar disorder were controlled (Tr. 26). She rejected Dr. McConnon's June, 2017 opinion that Plaintiff was unable to do even low stress jobs and would be off task 20 percent of the workday (Tr. 27). She noted that the records for the relevant period

-11-

showed that Plaintiff was alert and oriented with good memory skills and that the majority of the records showed "normal insight and judgment" (Tr. 28).  She rejected Dr. McConnon's February, 2018 finding that Plaintiff experienced memory problems due to medical conditions, again noting that the treating records did not support the finding of memory problems (Tr. 29).  She discounted Dr. Ronan's consultative finding of limitations in adaptation, noting that the more recent records did not support that conclusion (Tr. 29).

### III.  STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted).  The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  *Biestek* at 139 S. Ct. at1152; 42 U.S.C. §405(g).   "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

-12-

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r. of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of

disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 391–92 (6th Cir. 1999).

## V.  ANALYSIS

In his sole argument for remand, Plaintiff contends that the hypothetical modifiers posed to the VE did not account for his full degree of psychological limitation. *Plaintiff's Brief,* ECF No.14, PageID.1649 (*citing* Tr. 83-84).  He argues that unskilled work with "simple instructions" did not reflect his moderate limitation in concentration, persistence, and pace as found by the ALJ.  *Id.*  (*Citing* Tr. 23).  Plaintiff includes the following block quote without attribution:

> In analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v. Comm'r of Soc. Sec.*, No. 08–11398, 2009 WL 2365557, at * 10 (E.D.Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%–30% of the time at work. Thus, 'moderate' concentration problems ... need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the

> hypothetical of unskilled jobs with limited contact with co-workers and
> the public is not sufficient."); *Edwards v. Barnhart*, 383 F.Supp.2d 920,
> 930 (E.D.Mich.2005) ("Plaintiff may be unable to meet quotas, stay alert,
> or work at a consistent pace, even at a simple, unskilled, routine job.").

*Id.*   The quote is from *Taylor v Comm'r of Soc Sec*, 2011 WL 2682682, at *7 (E.D.

Mich. May 17, 2011)(modifiers of "simple," "routine" and "unskilled" adequately

accounted for the claimant's moderate deficiencies in concentration, persistence, or

pace)(Michelson, M.J.),[4] report and recommendation adopted, 2011 WL 2682892 (E.D.

Mich. July 11, 2011).

Plaintiff is correct that job testimony given in response to a hypothetical question

constitutes substantial evidence only if it accurately reflects the claimant's physical and

mental impairments. *Ealy v. Comm'r of Social Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

The Sixth Circuit has rejected the proposition that all of the claimant's conditions must

be listed verbatim, but "[t]he hypothetical question ... should include an accurate

portrayal of [a claimant's] physical and mental impairments." *Webb v. Comm'r of*

*Social Sec.*, 368 F.3d 629, 632 (6th Cir. 2004). However, the ALJ is not required to

incorporate unsubstantiated claims in hypothetical question to VE. *Stanley v. Secretary*

*of Health and Human Services*, 39 F.3d 115, 118–119 (6th Cir. 1994).

Plaintiff's reliance on *Edwards* is misplaced.  While the court in *Edwards* found

that the modifiers "simple, routine, unskilled work" were insufficient to address the

---

[4]Judge Michelson has since been elevated to the position of District Judge.

need to "meet quotas, stay alert, or work at a consistent pace," *id.* at 930,  Plaintiff's past  work as a bell ringer (by Plaintiff's own description) did not require him to meet quotas, be alert to workplace changes, or produce a work product at a "consistent pace" (Tr. 50-51).  As to "persistence," Plaintiff reported that the position allowed him to take breaks as needed (Tr. 50).   Moreover, *Edwards* cannot be read to impose a bright line rule for accounting for moderate concentrational deficiencies. Plaintiff's argument that the modifiers of "unskilled" work with "simple instructions" are automatically insufficient to capture moderate concentrational limitation is not supported by Sixth Circuit case law or cases from this District. *See Smith-Johnson v. Comm'r of Soc. Sec.,* 579 Fed. Appx. 426, 437, 2014 WL 4400999, *10 (6th Cir. September 8, 2014)(moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *Bellman v Comm's of Soc. Sec.*, 2019 WL 1521994, at *8 (E.D. Mich. March 20, 2019)(Grand, M.J.), report and recommendation adopted, 2019 WL 1515258 (E.D. Mich. April 8, 2019)("Because there is no bright-line rule requiring an ALJ to account for moderate [concentrational] limitations ... in a certain way, the Court must – given the particular evidence in the case at hand – determine whether the limitations imposed by the ALJ adequately accounted for" the moderate limitation).

Likewise here, substantial evidence supports the ALJ's finding that Plaintiff did not require more stringent limitations to address his moderate concentrational

limitation.  In November, 2015, Plaintiff reported that his psychological symptoms were "reasonably controlled" (Tr. 422).  While on occasion Plaintiff reported concentrational or memory problems, the treating and consultative records state repeatedly that he appeared fully oriented with a normal memory, mood, and concentration (Tr. 609, 621, 627, 698, 719, 781, 764, 811, 944, 1459).

Further, the ALJ's rationale for the inclusion of certain limitations (and exclusion of others) from the hypothetical question is well supported and explained. She rejected Dr. McConnon's finding that the condition of bipolar disorder was not well controlled and that Plaintiff would not be able to perform even a low stress job, would be off task 20 percent of the workday, and would miss four days a work every month (Tr. 28-29).  She noted that Dr. McConnon's own treating records indicated that the psychological conditions were well controlled and that Plaintiff did not exhibit psychological symptoms or concentrational problems at his appointments (Tr. 28-29 *citing* 758-759, 832-833).  She accorded partial weight to Dr. Ronan's consultative findings, adopting Dr. Ronan's opinion that Plaintiff could perform unskilled work, but discounting his finding that the physical conditions would impact Plaintiff's work abilities as "outside the scope of both the expertise of Dr. Ronan as well as the scope of the psychological examination" (Tr. 29).  Nonetheless, she adopted Dr. Ronan's finding that Plaintiff could "follow simple instructions" (Tr. 721).  She found that Dr. Osman's finding that Plaintiff would "rarely" miss one day of work each month and

could satisfactorily perform unskilled work was "in line with the record evidence" (Tr. 30 *citing* 737-738).  Because the ALJ's findings are strongly supported by the record and adequately explained, a remand is not warranted.

In closing, my recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's physical and mental conditions.  Nonetheless, because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level, it should not be disturbed by this Court.  *Mullen v. Bowen, supra.*

## VI.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment  [ECF No. 15] be GRANTED and that Plaintiff's Motion for Summary Judgment [ECF No. 14] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390,

401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: March 2, 2021

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 2, 2021 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager
